UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MABEL BAKER,

    Plaintiff,

vs.                                                                      CASE NO: 8:03-CV-2590-T-17EAJ

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

    Defendant.
_____/

**ORDER**

    This cause comes before the Court on the following motions and responses:

    1. Defendant's Motion for Summary Judgment and Memorandum in support thereof filed November 1, 2004 (Doc. No. 20 and Doc. No. 21).

    2. Affidavit in support of Defendant's Motion for Summary Judgment filed November 1, 2004 (Doc. No. 22).

    3. Plaintiff's Motion for Summary Judgment and Appendix of Cited Case Authorities filed November 1, 2004 (Doc. No. 23 and Doc. No. 25).

    4. Notice of Filing in Support of Plaintiff's Motion for Summary Judgment filed November 1, 2004 (Doc. No. 24).

    5. Notice of Filing in Support of Defendant's Motion for Summary Judgment filed November 2, 2004 (Doc. No. 26).

    6. Plaintiff's Response to Defendant's Motion for Summary Judgment filed November 18, 2004 (Doc. No. 27).

    7. Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment filed November 18, 2004, and re-filed April 14, 2005 (Doc. No. 29).

CASE NO: 8:03-CV-2590-T-17EAJ

Upon review of the motions and supporting memoranda, this Court finds that Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion for Summary Judgment is **DENIED**.

## I. Procedural History

For the purpose of ruling on the motions for summary judgment, this Court accepts the following facts as true.

Plaintiff, Mabel Baker ("Ms. Baker"), initiated this action, seeking long-term disability benefits under her former employer, Meristar Management, Inc.'s ("Meristar"), employee benefit plan ("the Plan")(Doc. No. 20; Doc. No. 22; Doc. No. 16). Ms. Baker worked as a masseuse for Meristar's "Safety Harbor Spa" facility (Doc. No. 20)(citing A.R. 112). Meristar's employee benefit plan is governed by 29 U.S.C. §1001, et. seq., the Employee Retirement Income Security Act of 1974, as amended ("ERISA")(Doc. No. 20). Under the Plan, Meristar employees are eligible for Group Short Term Disability ("STD") benefits and Group Long-Term Disability ("LTD") benefits, and, therefore, as a Meristar employee, Ms. Baker was able to participate in and seek benefits under the Plan (Doc. No. 20).[1] The Defendant, Hartford Life and Accident Insurance Company ("Hartford"), serves as administrator for the Plan (Doc. No. 20). As claims administrator, Hartford has the authority to make decisions regarding benefit claims and appeals (Doc. No. 20). The Plan gives Hartford "full discretion" to interpret terms and to make decisions regarding benefits (Doc. No. 20).[2]

Ms. Baker claims that while she was covered under the Plan, she became disabled and was, therefore, entitled to Long Term Disability Benefits (Doc. No. 16 and Doc. No. 23). Specifically, Ms. Baker argues that she sustained a disabilitating back injury (a herniated disc) on July 15, 2001, while she was employed with Meristar, and that as a result of the injury, she

---

[1] "(See POLICY 022-023, for STD, and 034-35, for LTD)(Doc. No. 20). The STD and LTD benefits of the Plan are funded by Group Policy GLT-674014 (Doc. No. 20)(citing POLICY 001-060).

[2] The Plan states that "[Hartford has] full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." (Doc. No. 20)(citing POLICY 030(STD); POLICY 046 (LTD).)

CASE NO: 8:03-CV-2590-T-17EAJ

was no longer able to perform her job (Doc. No. 20 and Doc. No. 23)(See also A.R. 180). Subsequently, Ms. Baker sought both STD and LTD disability benefits under the Plan (Doc. No. 20). Hartford awarded Ms. Baker STD benefits through the conclusion of her short-term benefit period, which ended on January 13, 2002 (Doc. No. 20)(citing A.R. 153-155; 158; 216). However, Hartford notified Ms. Baker that it would need to assess whether or not she had a pre-existing condition before deciding whether to grant or deny her claim for LTD benefits (Doc. No. 20)(citing A.R. 153-154; 4).

After receiving medical information from Ms. Baker's treating physician, and completing its review of the record, Hartford denied the LTD benefit claim (Doc. No. 20)(citing A.R. 6-8). Hartford's denial was based on its conclusion that Ms. Baker had received treatment for a pre-existing condition during the 90 day "look-back" period," and because she had "received treatment for the same pre-existing condition during the 90 day 'treatment-free' period" (Doc. No. 20).

Ms. Baker sought an appeal to her initial denial of LTD benefits through a letter dated April 29, 2003 (Doc. No. 20)(citing A.R. 39). In her letter, Ms. Baker stated that she was disabled due to two herniated discs caused from the July 15, 2001, injury, and claimed that the treatment prior to July 15, 2001 "was for soft-tissue injuries only" (Doc. No. 20 and Doc. No. 23)(See A.R. 39).

However, on appeal, Hartford affirmed its initial denial of Ms. Baker's request for LTD benefits (Doc. No. 20)(citing A.R. 11-13). Hartford contends that during both the initial claim review and appeal, Hartford carefully reviewed the record, which included Plaintiff's medical records and an independent medical consultant's report. Hartford further argues that the record supported its conclusion that Ms. Baker did not suffer disc herniations on July 15, 2001 (Doc. No. 20). Upon removal from state court, Ms. Baker filed the instant action on December 11, 2003, seeking review of her LTD benefits denial, pursuant to 29 U.S.C. §1132(a)(1)(B) (Doc. No. 2).

On November 1, 2004, Hartford Life moved for summary judgment (Doc. No. 20). In support of its motion, Hartford relies on the Affidavit of Annette Moore (Doc. No. 22), which it

CASE NO: 8:03-CV-2590-T-17EAJ

states "authenticates and attaches" the Plan documents (Doc. No. 20).[3] Hartford contends that it based its denial on the evidence contained in the Administrative Record ("AR")[4] which showed that Ms. Baker's back injury "was caused or contributed to by a pre-existing condition," and that, therefore, its denial of LTD benefits was proper (Doc. No. 20). Hartford contends that it thoroughly reviewed Ms. Baker's condition both before initially denying Ms. Baker's claim, and before denying the claim on appeal (Doc. No. 20). Hartford argues that its review of the Administrative Record "included, but was not limited to" a review of Ms. Baker's medical records and a report from independent medical consultant, Dr. Barry Turner, M.D., and, that Ms. Baker was given the opportunity to present new evidence to Hartford on appeal (Doc. No. 20). Finally, Hartford contends that the following evidence from the AR supports its decision: "(a) medical reports showing normal neurological exams after her alleged injury on July 15, 2001; (b) X-Ray and MRI reports after July 15, 2001 showing no disc herniations; and (c) the report of an independent medical consultant who concluded that the medical evidence did not show that Plaintiff suffered disc herniations on July 15, 2001" (Doc. No. 20 and Doc. No. 21).

Additionally, on November 1, 2004, Ms. Baker also moved for summary judgment (Doc. No. 23). In her motion, Ms. Baker argues that she "never previously suffered a disc herniation" that would prevent Hartford from denying her LTD benefits because of a pre-existing condition (Doc. No. 23). Ms. Baker claims that the review of her medical record and evidence in support of her claim for LTD benefits "were simply and arbitrarily dismissed by Defendant's self serving physician paper review," and that Hartford's denial was supported by insufficient evidence, and motivated by self-interest (Doc. No. 23). Ms. Baker argues that the paper review performed by Dr. Barry Turner, M.D. was an insufficient basis on which to deny the benefits (Doc. No. 23). Ms. Baker also contends that Dr. Turner's review failed to adequately consider her worker's

---

[3] Hartford contends that the affidavit "authenticates and attaches as Composite Exhibit "A" the relevant plan documents to this action: (a) the policy ("Policy") issued by Hartford to Meristar, POLICY 001-018; and (b) the Booklet/Certificate for the Policy (which also serves as the Plan's Summary Plan Description ("SPD")), and endorsements thereto, POLICY 019-060" (Doc. No. 20)(citing POLICY 030 (STD); POLICY 046 (LTD)).

[4] Hartford cites that Exhibit "B" of the Affidavit (Doc. No. 22) comprises the administrative record in which Hartford maintained regarding Ms. Baker's claim (Doc. No. 20)

CASE NO: 8:03-CV-2590-T-17EAJ

compensation independent medical examination, (IME) (performed by Dr. John C. Baker, M.D.) along with other medical evidence in her favor (Document No. 23)(citing A.R. 121-123).

## II. Standard of Review

### A. Summary Judgment Standard of Review

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure, if the court determines that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986). Courts may render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," support the finding that there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). Additionally, summary judgment is appropriate where a party fails to make a "sufficient showing" to establish the existence of an element that is essential to that party's case, and where that party has the burden to prove the existence of that element. Celotex Corp. v. Catrett, 477 U.S. at 322-333.

The moving party bears the initial burden of showing support for its motion for summary judgment. Id. at 323. The burden then shifts to the nonmoving party to go "beyond the pleadings" to show that a genuine issue of material fact does exist and that they can establish the essential element. Id. at 324. See also Hilburn v. Murata Electronics North America, Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). A material fact is one which "might affect the outcome of the suit under the governing law," and a genuine issue exists where the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Furthermore, in deciding a motion for summary judgment, courts must construe the evidence in a "light most favorable to the non-moving party." Hilburn v. Murata Electronics North America, Inc., 181 F.3d at 1225.

### B. ERISA Standard of Review

Participant or beneficiary of an employee benefit plan is allowed to bring a civil cause of action to seek the recovery of benefits that have been denied pursuant to 29 U.S.C. §1132 (a)(1)(B). This ERISA statute is silent as to the standard for review to be applied when

CASE NO: 8:03-CV-2590-T-17EAJ

reviewing an administrator's decision to deny benefits. Firestone Tire & Rubber Co., v. Bruch, 489 U.S. 101, 109, 109, S.Ct. 948, 103 L.Ed. 2d 80 (1989). However, in Firestone, the Supreme Court announced several standards that courts may apply when reviewing such decisions. Id. at 115. Borrowing from principles of trust law, the Supreme Court announced that in an action arising under 29 U.S.C. §1132(a)(1)(B), courts should apply the *de novo* standard of review "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. See also Lee v. Blue Cross/Blue Shield of Alabama, 10 F.3d 1547, 1549 (11th Cir. 1994). If, however, the administrator or fiduciary is given discretionary authority, the "arbitrary and capricious" standard is the appropriate standard of review. HCA Health Services of Georgia, Inc., v. Employers Health Insurance Co., 240 F. 3d 982, 992 (11th Cir. 2001). Under the arbitrary and capricious standard, the court will determine whether there was a "reasonable basis" for the administrator's decision "based upon the facts as known to the administrator at the time the decision was made." Jett v. Blue Cross & Blue Shield of Alabama, 890 F. 2d 1137, 1139 (11th Cir. 1989)(citing Brown v. Retirement Committee of Briggs & Stratton Retirement Plan, 797 F. 2d 521, 532 (7th Cir. 1986); Denton v. First National Bank of Waco, Texas, 765 F. 2d 1295, 1304 (5th Cir. 1985); Berry v. Ciba-Geigy Corp., 761 F. 2d 1003, 1007 (4th Cir. 1985)).

However, in Firestone, the Supreme Court noted that where the "administrator or fiduciary is acting under a possible or actual conflict of interest," the "conflict must be weighed as a facto[r] in determining whether there is an abuse of discretion." Firestone, 489 U.S. at 115 (citing Restatement (Second) of Trusts § 187, Comment *d* (1959)). See also Brown v. Blue Cross & Blue Shield of Alabama, Inc., 898 F. 2d 1556, 1561 (11th Cir. 1990). This has been referred to as the "heightened" arbitrary and capricious standard. Levinson v. Reliance Standard Life Ins. Co., 245 F. 3d 1321, 1325-1326 (11th Cir. 2001). Under this standard, "the burden shifts to the [administrator] to prove that its interpretation of the plan provisions committed to its discretion was not tainted by self interest." HCA Health Services of Georgia, Inc., v. Employers Health Insurance Co., 240 F. 3d at 993 (11th Cir. 2001)(quoting Brown v. Blue Cross & Blue Shield of Alabama, Inc., 898 F. 2d 1556, 1566 (11th Cir. 1990)).

CASE NO: 8:03-CV-2590-T-17EAJ

Thus, the Eleventh Circuit has adopted the following standards for review: "(1) *de novo*, applicable where the plan administrator is not afforded discretion, (2) arbitrary and capricious when the plan grants the administrator discretion, and (3) heightened arbitrary and capricious where there is a conflict of interest." Paramore v. Delta Air Lines, Inc., 129 F.3d 1446, 1449-50 (11th Cir. 1997)(citing Buckley v. Metropolitan Life, 115 F. 3d 936, 939 (11th Cir. 1997)).

### C. Application of ERSIA Standard of Review

In the instant case, the record reflects that the Plan gives Hartford discretion to interpret plan terms and make decisions regarding benefit claims (Doc. No. 20). Specifically, the Plan gives Hartford "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." (Doc. No. 20)(citing POLICY 030 (STD); POLICY 046 (LTD)). Therefore, because the Plan grants Hartford discretion, the *de novo* standard will not apply. Rather, this Court must "apply at the very least the arbitrary and capricious standard and possibly the heightened arbitrary and capricious review." Earnest v. Metropolitan Life Insurance Company, 291 F. Supp. 2d 1327, 1335 (M.D. Fla. 2003).

A conflict of interest exists when the administrator or fiduciary has the authority to make discretionary decisions, and is, at the same time, also responsible for paying out claims from its own assets. Brown v. Blue Cross & Blue Shield of Alabama, Inc., 898 F. 2d at 1562 (citing Jader v. Principal Mutual Life Ins. Co., 723 F. Supp. 1338, 1343 (D. Minn. 1989)). See also Gray v. Hartford Life and Accident Insurance Company, 2004 U.S. Dist. LEXIS 21321, *17-18 (M.D. Fla. 2004)(applying the heightened arbitrary and capricious standard where the insurance company was granted discretionary authority in decision making and paid claims out of its own assets). The record reflects that Hartford acts as the administrator and determines whether or not to grant or deny benefits, and that Hartford insures the Plan (Doc. No. 20). Thus, it appears that Hartford does have an inherent conflict of interest and this Court finds that the heightened arbitrary and capricious standard is appropriate. However, "this Court is not required to consider the fiduciary's self-interest unless the Court concludes the benefit determination was wrong." Grayer v. Liberty Life Assur. Co., 331 F. Supp. 2d 1383, 1390 (M.D. Fla. 2004).

7

CASE NO: 8:03-CV-2590-T-17EAJ

### III. DISCUSSION

"Regardless of whether arbitrary and capricious or heightened arbitrary and capricious review applies," the first step of the analysis is to determine whether or not the administrator's interpretation of the plan was wrong. HCA Health Services of Georgia, Inc., v. Employers Health Insurance Co., 240 F. 3d at 993. See also Brown v. Bellsouth Telecommunications Inc., 73 F. Supp. 2d 1308, 1319 (M.D. Fla. 1999). This decision must first be made, before the court also considers any self interest on part of the administrator. Johnson v. New York Life Insurance Company, 2001 U.S. Dist. LEXIS 25619, *13 (M.D. Fla. 2001)(citing Levinson v. Reliance Standard Life Ins. Co., 245 F. 3d at 1326)).

**A. Hartford's Interpretation of the Plan**

The plan administrator's decision will be considered "wrong" when, "after a *de novo* review of the plan documents and disputed terms," the court disagrees with the administrator's interpretation of the plan. Earnest v. Metropolitan Life Insurance Company, 291 F. Supp. 2d at 1335. In determining whether the administrator acted reasonably in interpreting the plan, courts may "look only to the facts known to the administrator at the time the decision was made" to deny the claim. Pittard v. Watkins Associated Industries, Inc., 990 F. Supp. 1444, 1453 (N.D. Ga. 1997)(citing Lee v. Blue Cross/Blue Shield of Alabama, 10 F.3d at 1550)). If, after this review, the court concludes that the decision was not wrong, the analysis ends there and summary judgment should be awarded in favor of the administrator. Hagberg v. Liberty Life Assurance Company of Boston, 321 F. Supp. 2d 1270, 1272 (N. D. Fla. 2004). However, if the court concludes that the decision was "wrong," then it must look to see if the claimant has "proposed a reasonable interpretation of the plan," followed by a determination of whether the administrator's decision is still considered reasonable. Earnest v. Metropolitan Life Insurance Company, 291 F. Supp. 2d at 1335(referring to HCA Health Services of Georgia, Inc., v. Employers Health Insurance Co., 240 F. 3d at 993)).

**i)** *Terms of the Plan*

CASE NO: 8:03-CV-2590-T-17EAJ

In assessing whether Hartford reasonably interpreted the Plan, the Court will first look to the plain language of the terms.  See Luton v. Prudential Insurance Company of America, 88 F. Supp. 2d 1364, 1370-1371 (S. D. Fla. 2000).

With regard to LTD benefits, the Plan defines "Disability" as follows:

> "Disability or Disabled means that during the Elimination Period and for the next 24 months you are prevented by: 1. accidental bodily injury; 2. sickness; 3. Mental Illness; 4. Substance Abuse; or 5. pregnancy, from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are no more than 80% of your Indexed Pre-disability Earnings.  After that, you must be so prevented from performing one or more of the Essential Duties of Any Occupation."

(Doc. No. 20)(citing (POLICY 047, Booklet/Certificate p. 47)).

Under the Plan, LTD benefit coverage is to be excluded for "disabilities caused or contributed to by a pre-existing condition" (Doc. No. 20).   Specifically, the Plan provides:

> No [LTD] benefit will be payable under the Plan for any Disability that is due to, contributed to by, or results from a Pre-existing Condition, unless such Disability begins:
> 1. after the last day of 90 consecutive day(s) while insured during which you receive no medical care for the Pre-existing condition; or
> 2. after the last day of 365 consecutive day(s) during which you have been continuously insured under this plan.

(Doc. No. 20)(citing POLICY 042, Booklet/Certificate/SPD (LTD portion), p.22)

Under the Plan, "pre-existing condition" is defined as:

> 1. any accidental bodily injury, sickness, Mental Illness, pregnancy, or episode of Substance Abuse; or
> 2. any manifestations, symptoms, findings, or aggravations related to or resulting from such accidental bodily injury, sickness, Mental Illness, pregnancy, or Substance Abuse;
>
> for which you received Medical Care during the 90 day period that ends the day before;
> 1. your effective date of coverage; or
> 2. the effective date of a Change in Coverage

(Doc. No. 20)(citing (POLICY 0422, Booklet/Certificate/SPD (LTD portion), p. 22.))

Furthermore, the Plan provides:

> Medical Care is received when:
> 1. a Physician is consulted or medical advice is given; or
> 2. treatment is recommended, prescribed by, or received from a Physician.
>
> Treatment includes but is not limited to:
> 1. medical examinations, tests, attendance or observation; and
> 2. use of drugs, medicines, medical services, supplies or equipment.

9

CASE NO: 8:03-CV-2590-T-17EAJ
(Doc. No. 20)(citing POLICY 042 Booklet/Certificate/SPD (LTD portion), p.22)

      This Court does not find that the terms of the Plan are ambiguous with regard to its definition of "Disability" and its definition of "Pre-Existing Condition" and related terms. However, the Court must next consider Hartford's interpretation of the Plan's terms and the basis for its denial decision.

      **ii)** *Hartford's Argument*

      Hartford claims that Ms. Baker's back condition was caused by a pre-existing condition, and that, as a result, it properly denied the LTD benefit claim (Doc. No. 20). Specifically, Hartford contends that pursuant to the Plan, Ms. Baker's 90 day "look-back" period was from January 1, 2001 to March 31, 2001, and that "the 90 day "treatment free" period was from April 1, 2001 to June 29, 2001" (Doc. No. 20).[5] Hartford asserts that the evidence on record shows that Ms. Baker received treatments for neck and back pain during the 90-day "look-back" period, and received treatments for neck and back pain during the 90-day treatment free period (Doc. No. 20). Additionally, Hartford claims that Ms. Baker's medical records show that she was treated for pulled muscles in her upper mid back on May 16th, 2001 (Doc. No. 20)(citing A.R. 58-61). Hartford argues that its decision is supported by evidence from the independent medical examiner's report showing no disc herniations, and evidence in the AR which shows no disc herniations and normal neurological exams following the alleged July 15, 2001 injury (Doc. No. 20). Finally, Hartford argues that its decision to deny Ms. Baker's benefits was not legally "wrong" (Doc. No. 21).

      **iii)** *Ms. Baker's Argument*

      Ms. Baker contends that with Dr. Turner's "self-serving physician paper review," Hartford "simply and arbitrarily dismissed" her worker's compensation independent medical examination and other medical evidence in favor of her claim (Doc. No. 23). Ms. Baker argues that on July 15, 2001, she sustained a herniated disc, and that because she "had never previously

---

[5] Hartford cites (Mathematical Calculation and the A.R. 2, "P/E Period: 01/01/2001-3/31/2001.") Hartford also notes that Ms. Baker became eligible for LTD benefits on April 1, 2005 (the Plan's effective date)(Doc. No. 20)(citing A.R. 002).

CASE NO: 8:03-CV-2590-T-17EAJ

suffered a disc herniation," Hartford should not have dismissed her LTD claims because of a pre-existing condition (Doc. No. 23).

Specifically, Ms. Baker argues that an independent medical examination through her worker's compensation carrier, Kemper Insurance Company, performed by board certified orthopedic surgeon, Dr. John C. Baker, M.D., revealed that she suffered from a disc herniation caused by the July 15, 2001 injury and, as a result, was rendered disabled and unable to return to her job (Doc. No. 23). Furthermore, Ms. Baker claims that an evaluation performed in August 2001 by physician Dr. Shim showed that she should have an MRI of the lumbar spine and remain out of work (Doc. No. 23). In a letter sent to Hartford, Ms. Baker disclosed the results of the discogram performed by Dr. Solomon, which she contends revealed "BACK AND LOWER EXTREMITY PAIN, HERNIATED INTERVETEBRAL DISCS" (Doc. No. 23). Ms. Baker alleges that in making his report, Dr. Turner failed to note the results of the discogram and made no attempt to contact her worker's compensation IME orthopedist, Dr. Baker (Doc. No. 23). Finally, Ms. Baker contends that Hartford's decision to deny the LTD benefits was motivated by self-interest (Doc. No. 23).

### iv) *Analysis*

In considering the arguments put forth by Hartford and Ms. Baker, as well as the evidence contained in the Administrative Record, this Court finds that Hartford did not act unreasonably in interpreting the Plan and in rendering its decision to deny the LTD benefits, and, therefore, Hartford's decision was not "wrong."

In reviewing Ms. Baker's claim for LTD benefits, Hartford initially notified Ms. Baker that it would need to assess whether her disability was caused by a pre-existing condition, and would, therefore, need to review her treating physicians' records (Doc. No. 20)(citing A.R. 4). Subsequently, Ms. Baker provided Hartford with an "Attending Physician Statement" from her treating physician, Dr. Gilberg, stating that she suffered from a disc herniation caused by the July 15, 2001 injury (Doc. No. 20)(A.R. 97-98). However, Dr. Gilberg's conclusion was based on a June 20, 2002 CT of the lumbar spine performed by Dr. Winters, a June 20, 2002 X-Ray of the Thoracic and Lumbar Spine performed by Dr. Baker, and a December 11, 2001 MRI performed by Dr. Gilberg (Doc. No. 20)(citing A.R. 97-98).

11

CASE NO: 8:03-CV-2590-T-17EAJ

  However, Hartford based its initial denial on evidence contained in Ms. Baker's medical records which indicated that Ms. Baker's back injury was caused by a pre-existing condition (Doc. No. 20). Evidence in the record shows that during the 90 day "look-back period," Ms. Baker received from Dr. Bell "spinal manipulations and heat on January 29, 2001 for 'neck pain, dorsal pain, and low back pain;" adjustments and heat for her cervical, thoracic, and lumbar areas on February 13 and 20 2001; and manipulation and heat for her hips and thoracic area on March 13 and 27, 2001"(Doc. No. 20 (citing A.R. 7; 65; 74).

  Additionally, the record shows that Ms. Baker received treatment during the 90-day treatment free period, as she received "cervical and lumbar adjustments and heat to the thoracic area from Dr. Bell on May 1, 2002 for treatment of neck pain, dorsal pain, and low back pain"(Doc. No. 20)(citing A.R. 7; 65; 74). Plaintiff's medical records also show that she was treated in May 2000 after she "pulled muscles in her upper mid back while doing massage therapy" (Doc. No. 20)(citing A.R. 58-61).

  Evidence in the record does not confirm that Ms. Baker suffered disc herniations on July 15, 2001. The record shows that the treating physician on the date of the injury diagnosed Ms. Baker with "L[umbo]/S[acral] strain," and recommended that she return to work on "modified duty" (Doc. No. 20)(citing A.R. 56-57). Additionally, on July 20, 2001, Ms. Baker was diagnosed with tenderness in the lumbosacral area, and orthopedist Dr. Shim reported that Ms. Baker was "neurologically intact and had negative long tract signs" (Doc. No. 20)(citing A.R. 145). X-rays taken on the same day showed "mild degenerative chances at the L5-S1[low back-hip] level without any evidence of any vertebral body malalignment," and with "no other osse[o]us [bony] abnormalities noted" (Doc. No. 20)(citing A.R. 145). An MRI taken on December 11, 2001 also showed no evidence of disc herniations (Doc. No. 20)(citing A.R. 142).

  Ms. Baker was examined by Dr. Deweese, a neurosurgeon on January 9, 2002, and he found "no lower back pain radiating to the legs," "no herniated discs," and only bulging discs at T12-L1 and L4-5 (Doc. No. 20)(citing A.R. 138-140). Additionally, an examination on June 13, 2002, by neurologist Dr. Winters,showed that Ms. Baker's back pain was "most likely secondary to soft tissue injury rather than a disk herniation," as Dr. Winters found that Ms. Baker had no

12

CASE NO: 8:03-CV-2590-T-17EAJ

"radicular findings" and no negative results from a neurological exam (Doc. No. 20)(citing A.R. 131-133).

The evidence also reflects that disc herniations did not appear on record until 2002. In June 2002, a "CT Guided Myelogram" taken of Ms. Baker's lumbar spine showed "impingement of the spinal cord ("canal stenosis") at the T12-L1 and L4-L5 levels," and "a disc bulge to the right at the L5-S1 level" (Doc. No. 20)(citing A.R. 127). However, evidence during this time also showed that Ms. Baker was neurologically intact (Doc. No. 20)(citing A.R. 126). On July 12, 2002, Ms. Baker was examined by her worker's compensation independent medical examiner, Dr. John Baker (Doc. No. 20)(citing A.R. 123). Dr. Baker concluded on this date that Ms. Baker suffered from herniated discs at T12-L1 and L4-L5, although he also concluded that she did not need surgery at this time and that she suffered from no neurological deficits (Doc. No. 20)(citing A.R. 123).

The record also reflects that Hartford obtained an independent medical examination report by Dr. Barry Turner, a Board-Certified Orthopedic Surgeon (Doc. No. 20)(A.R. 31-32). Upon reviewing Ms. Baker's medical records, Dr. Turner concluded that Ms. Baker's back pain was a result of soft-tissue injuries (Doc. No. 20)(citing A.R. 21). Specifically, Dr. Turner found that on July 15, 2001, (the date of the alleged injury) Ms. Baker presented with a history of lower back pain and that at this time, there was no diagnosis of a herniated disc (Doc. No. 20)(citing A.R. 15-16). Dr. Turner also determined that the MRI taken on December 12, 2001 "indicated no evidence of a herniated disc or nerve root compression" (Doc. No. 20)(citing A.R. 16). Upon reviewing medical reports from Dr. Deweese and Dr. Winters (produced in 2002), Dr. Turner concluded that there was no evidence of any neurological abnormalities, pain radiating to the legs, nor evidence of herniated discs, radiculopathy, nerve root compression or sciatica (Doc. No. 20)(citing A.R. 16-17). Dr. Turner concluded in his review that Dr. Winters diagnosed Ms. Baker with low back pain and noted that the pain was likely caused from a soft-tissue injury (Doc. No. 20)(A.R. 16-17). Dr. Turner also reviewed the CT Scan from June 20, 2002 and found it to be inconsistent with a prior MRI finding and with the neurological findings of Dr. Deweese and Dr. Winters (Doc. No. 20)(citing A.R. 17).

With regard to the findings of Dr. Baker, Ms. Baker's worker's compensation

CASE NO: 8:03-CV-2590-T-17EAJ

independent medical examiner, Dr. Turner found his results to also be inconsistent with other medical evidence (Doc. No. 20). Specifically, Dr. Turner found that in his report, Dr. Baker noted disc bulges, while noting disc herniations in another part of the report (which Dr. Turner found to be inconsistent with his MRI findings)(Doc. No. 20)(citing A.R. 18). Furthermore, Dr. Turner noted that while Dr. Baker noted that Ms. Baker had disc bulges, he also noted that she needed no further testing or surgery (Doc. No. 20)(citing A.R. 18).

Dr. Turner concluded that the evidence failed to show Ms. Baker suffered from disc herniations, and that the results of her medical exams confirmed that she had normal neurological results (Doc. No. 20)(citing A.R. 19). Dr. Turner also found that based on the reports from Dr. Winters and Dr. Deweese, and the December 2001 MRI, there was no evidence of herniated discs, nerve root compressions, or radiculopathy (Doc. No. 20)(citing A.R. 19). Additionally, Dr. Turner noted that the July 2001 myelogram showed spinal stenosis, but because it conflicted with the December 2001 MRI and the findings of Dr. Baker, Dr. Deweese, and Dr. Winters, it could not be considered credible (Doc. No. 20)(citing A.R. 19).[6] In summary, Dr. Turner found no evidence to confirm that Ms. Baker's back pain after July 15, 2001, was any different from the pain for which she received prior treatment, and, therefore, Dr. Turner concluded that Ms. Baker's pain was caused by the soft tissue injury (Doc. No. 20)(citing A.R. 21).

Given the overwhelming amount of evidence contained in the Administrative Record which shows that Ms. Baker did not suffer disc herniations on July 15, 2001, and which supports Hartfords conclusion that Ms. Baker's disability was caused or contributed to by a pre-existing injury, this Court finds that Hartford's decision to deny the LTD claim was not "wrong" or unreasonable. Ms. Baker failed to present sufficient evidence in the record to show that she in fact, suffered from disc herniations on July 15, 2001, and, therefore, Hartford was correct to deny Ms. Baker's claim. Furthermore, the only significant evidence showing disc herniations came almost a year after the July 15, 2001 injury.

---

[6] Dr. Turner also noted, that even though the myelogram showed evidence of spinal stenosis, it did not show evidence of a herniated disc or compression of the nerve root (Doc. No. 20)(citing A.R. 19).

14

CASE NO: 8:03-CV-2590-T-17EAJ

In her motion, Ms. Baker relies on <u>Migliaro v. IBM Long-Term Disability Plan</u>, 231 F. Supp. 2d 1167 (M.D. Fla. 2002). However, the facts of <u>Migliaro</u> are quite different from the facts in the instance case, and furthermore, the administrator in <u>Migliario</u> failed to based its decision on objective evidence---that is not the case here. Additionally, the Court finds Ms. Baker's argument in comparison to the facts and decisions of <u>Hagberg v. Liberty Life Assurance Company of Boston</u>, 321 F. Supp. 2d 1270 (N.D. Fla. 2004), <u>Brown v. Bellsouth Telecommunications</u>, 73 F. Supp. 2d 1308 (M.D. Fla. 1999), and <u>Levinson v. Reliance Standard Life Ins. Co.</u>, 245 F. 3d 1321 (11th Cir. 2001) to be without merit. Ms. Baker also argues that Hartford dismissed the findings of Dr. John C. Baker (Doc. No. 23). Hartford however, argues that Ms. Baker's argument places too much weight on Dr. Baker's findings (Doc. No. 29), and this Court agrees. The record shows that the independent medical consultant, Dr. Turner, did consider Dr. Baker's findings (which were generated almost a year after Ms. Baker's alleged injury), and that Dr. Turner concluded that Dr. Baker's findings contained significant inconsistencies with other medical evidence contained in the record.

The Supreme Court in <u>Black & Decker Disability Plan v. Nord</u>, held that ERISA does not require administrators to "accord special deference to the opinions of treating physicians." <u>Black & Decker Disability Plan v. Nord</u>, 538 U.S. 822, 831; 123 S. Ct. 1965; 155 L. Ed. 2d 1034 (2003). Thus, Hartford need not have given special weight to the opinions of Ms. Baker's treating physicians. However, the record shows that Hartford did consider the opinions of Ms. Baker's treating physicians, but found that the opinions contained significant inconsistencies and failed to show that Ms. Baker did in fact suffer from disc herniations from the July 15, 2001 injury. Thus, given the evidence in support of the LTD claim denial, this Court concludes that Hartford did not act unreasonably or abuse any discretion in making its decision, and that its decision was not legally "wrong."

**B. Hartford's Self-Interest**

Ms. Baker contends that Hartford's decision to deny the LTD benefits was motivated by self-interest (Doc. No. 23). However, as this Court finds Hartford's decision to deny the benefits was not legally "wrong," it is not necessary to consider any self interest on the part of

CASE NO: 8:03-CV-2590-T-17EAJ

Hartford.  See <u>Johnson v. New York Life Insurance Company</u>, 2001 U.S. Dist. LEXIS 25619, *13 (M.D. Fla. 2001).  Accordingly, it is

    **ORDERED** that the Defendant's Motion for Summary Judgment (Doc. No. 20). be **GRANTED**, and that Plaintiff's Motion for Summary Judgment (Doc. No. 23) be DENIED.

    The Clerk of Court is **DIRECTED** to enter judgment for Defendant and against Plaintiff and close this case.

    **DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 21st day of April, 2005.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:
All parties and counsel of record